UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 11-10279-RWZ

CHRISTOPHER S. GODFREY and DENNIS FISCHER

v.

UNITED STATES OF AMERICA

MEMORANDUM OF DECISION AND ORDER

June 12, 2017

ZOBEL, S.D.J.

Petitioner Christopher S. Godfrey has moved pro se under 28 U.S.C. § 2255 to vacate his conviction. Docket # 336[1]. Petitioner Dennis Fischer has separately moved pro se under 28 U.S.C. § 2255 to vacate his sentence. Docket # 340. Godfrey alleges that his counsel was constitutionally ineffective for failing to investigate, interview, subpoena, and call nine defense witnesses. Fischer alleges that his counsel was constitutionally ineffective for failing to conduct discovery or investigate the loss amount proposed by the government. Both request an evidentiary hearing in support of their motions. Docket ## 337 and 341. The government opposes all motions and asserts that neither petitioner can establish by a preponderance of the evidence an ineffective assistance of counsel claim. Docket ## 350 and 352.

---

[1] Although Godfrey's motion is titled a "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence," Docket # 336, at 1, the substance of his motion is directed to vacate, set aside, or correct his conviction. See id. at 11 ("Had the jury believed Godfrey's witnesses and disbelieved Burris and Kelly, Godfrey would have been acquitted.").

**I.  Background**

The factual background of this case is fully described in <u>United States v. Godfrey</u>, 787 F.3d 72 (1st Cir. 2015).  I include only those facts necessary to frame the issues here.

In 2009, Godfrey and Fischer formed and ran a Florida company, Home Owner Protection Economics Inc. ("HOPE"), that purported to sell mortgage modifications to distressed homeowners nationwide for an up-front fee of $400 to $900.  In order to obtain these payments, HOPE lied to its customers about its affiliation with the homeowners' mortgage lenders and its "98 percent success rate" in obtaining modifications.  HOPE falsely informed its customers that their applications had been approved at the outset by HOPE's fictitious underwriters, and all that was required was for the homeowners to complete paperwork.  The paperwork HOPE provided these homeowners with was a replicate of the Treasury Department's free Home Affordable Modification Program ("HAMP") application form.  The only difference between the two forms was that HOPE's form replaced the government's official telephone number with HOPE's number.  "In fact, the loan modification request could never have been granted at the outset of the process, much less by HOPE rather than the lender."  <u>Godfrey</u>, 787 F.3d at 75.  Eventually, when its customers failed to receive the benefits they were promised, they complained to HOPE and, ultimately, to state authorities.

On August 3, 2011, a federal grand jury returned an indictment charging Godfrey and Fischer[2] with numerous mail fraud and wire fraud violations, and misuse of a government seal, as well as conspiring to commit those crimes.  On November 14,

---

[2]  The grand jury also indicted co-defendants Vernell Burris, Jr. and Brian M. Kelly, who entered into a plea agreement with the government.  Docket ## 70 and 124.

2013, after a jury trial both were convicted on all counts.[3] The sentencing hearing occurred on February 20, 2014. The court found, after applying various enhancements, that the total offense level for each petitioner was 39 and the criminal history category was I, resulting in an advisory guideline range of 262 to 327 months. All parties agreed that the guideline range was too high. The government recommended a 10-year prison sentence. The court varied even further downward and sentenced each petitioner to a term of seven years imprisonment. Both appealed, and the Court of Appeals for the First Circuit affirmed their convictions in their entirety. See Godfrey, 787 F.3d at 81.

Petitioners timely filed their section 2255 motions, each alleging ineffective assistance of counsel.

## II.    Standard of Review

Section 2255 allows a federal prisoner to seek post-conviction relief when "the sentence was imposed in violation of the Constitution or laws of the United States . . . ." See 28 U.S.C. § 2255(a). It is well settled that the Sixth Amendment "right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (citations omitted). The petitioner, however, bears the burden of establishing the need for relief and showing the need for an evidentiary hearing. See Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003) ("Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted."). Summary dismissal of a section 2255 claim is appropriate when the petition "(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to

---

[3]     On the first day of trial, the government dismissed counts 6 and 15 because the individual customer to whom those counts related was unable to testify. See Docket # 212.

the alleged facts by the files and records of the case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974).

III.     Discussion

To succeed on an ineffective assistance of counsel claim, the petitioner must establish by a preponderance of the evidence that (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceedings would have been different." United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (citing Strickland v. Washington, 466 U.S. 668, 688 (1984)); see Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993) ("The burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence."). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "Judicial scrutiny of counsel's performance must be highly deferential" and subject to "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "A defendant's failure to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) (citing Strickland, 466 U.S. at 697); see Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

### A.     Godfrey's Claim of Ineffective Assistance of Counsel

Godfrey claims that his trial counsel was constitutionally ineffective for one reason: failing to investigate, interview, subpoena, and call nine defense witnesses

4

who, he alleges, would have offered testimony that refuted the testimony of two government witnesses. According to Godfrey, Ralph Thumma, Loretta Seneca, Michael Froio, and Andy Keller, all employees at HOPE, would have testified that Godfrey had no involvement in the sales process and that all sales were handled by Burris and Fischer, and that Burris conducted all hiring and training of employees. See Docket # 336, at 6–10. Ira Bornstein[4], an employee at the credit card company that managed HOPE's business account, allegedly would have testified that Godfrey "was operating within [an] acceptable range and margin of good business contrary to the government's theory of the case that everything at HOPE was a complete fraud." Id. at 9. Chantal Lydia Swart, another employee at HOPE, allegedly would have testified that Godfrey instructed her "to advise customers that there were no guarantees that the customer would receive a modification or [sic] their mortgage." Id. at 10. Similarly, Godfrey alleges that Jennifer Coon would testify that HOPE employees "were honest based on conversations she overheard." Id. James Perdue allegedly would have testified that "if an employee was bad that employee would walk out into the hallway to sell dirty or use their own personal cell phones." Id. Lastly, Bert Jerome Smith allegedly would have testified that Godfrey was a "good person" and that "he didn't do anything dishonest and that he did not tell customers that there was a guarantee of receiving a loan modification." Id.

Godfrey contends that the proposed testimony of these nine witnesses "would have refuted everything that Burris and Kelly falsely testified to the jury about regarding

---

[4] Fisher incorrectly refers to this witness as "Ira Bernstein." See Docket # 336, at 9. Evidence at trial reflects that the proper spelling of this witnesses's surname is "Bornstein." See e.g., Trial Exhibit 18.01.

5

[sic] Godfrey." Id. at 10. Godfrey essentially retries the case to prove his innocence and argues, through these nine witnesses, that he did not know of his "rogue" employees' fraudulent sales tactics. See Godfrey, 787 F.3d at 76. In order to succeed on his claim of ineffective assistance of counsel, Godfrey must overcome the strong presumption that counsel's decision not to call these witnesses would be considered sound trial strategy. See Lema, 987 F.2d at 54 ("The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony.").

Here, Godfrey's counsel stated in a verified affidavit that he was aware of these nine witnesses but, that after conducting investigations into each, made a strategic decision not to call them for various reasons. See Docket # 355-1. For instance, Keller and Smith had made previous statements that would have supported the government's theory of the case, and Swart, Smith, Thumma, and Coon's testimonies would not have been helpful to the defendants' case. Godfrey's counsel also stated that he had interviewed Bornstein and decided not to call him as a witness "because his testimony about HOPE's very high credit card chargeback numbers would have been at least as favorable to the government as to the defense, if not more so." Id. at 3; see Trial Exhibit 18.03 (email from Bornstein to Fischer informing him of HOPE's high chargebacks and that "it will get =gly [sic], and I can't yet open another account to spread volume out."). Under these circumstances, Godfrey has not met his burden to show that his attorney's decision not to call these witnesses was objectively unreasonable. See Gonzalez-Gonzalez v. United States, 49 F. App'x 322, 325 (1st Cir. 2002).

6

In any event, even assuming arguendo that Godfrey had prevailed in showing deficient performance, he fails to prove that the trial might have ended differently had his counsel called these witnesses. Godfrey's argument presumes that the jury convicted him on all counts based solely on Burris and Kelly's testimonies. He claims that his conviction "hinged solely on the testimony of Vernell Burris and Brian Kelley, who provided the 'insider' information and evidence needed to convict." Docket # 354, at 2. But the government did not rely solely on Burris and Kelly's testimony to provide clear evidence of Godfrey's role. Specifically, it introduced numerous emails from complaining customers addressed to Godfrey, or later forwarded to Godfrey, and cease-and-desist letters from six states addressed to HOPE, which were admitted for the purpose of showing that Godfrey had notice of customers complaining about fraudulent activities, and therefore notice that his employees were likely engaged in such tactics. See Trial Exhibits 12.02–12.04, 12.06–12.07, 13.01, and 13.02. The government also introduced evidence that either Godfrey or Fischer, copying Godfrey, emailed to staff telemarketing scripts that directed them to use statements that claimed customers were approved by HOPE's (fictitious) underwriting staff for a loan modification before an application had even been submitted. See e.g., Trial Exhibit 6.03 (email from Godfrey to Fischer enclosing a script stating: "Great news, I was right, you are approved!!! You have been approved for a loan modification with our underwriting staff."). Thus, "[t]he government's case . . . was not merely strong; it was overwhelming." Godfrey, 787 F.3d at 78; see Strickland, 466 U.S. at 695–96 ("[A] court hearing an ineffectiveness claim must consider the totality of the evidence . . . . [A] verdict or conclusion only weakly supported by the record is more likely to have been

7

affected by errors than one with overwhelming record support."). Accordingly, even had it been error not to call these nine witnesses, Godfrey has not met his burden of showing actual prejudice—that is, showing that the verdict would reasonably have been different had counsel called them.

B.     **Fischer's Claim of Ineffective Assistance of Counsel**

Fischer asserts that his counsel was constitutionally ineffective for "failing to conduct discovery or investigate the loss amount proposed by the government," which, he argues, led to a longer sentence. Docket # 341, at 2.[5] He claims that the government "relied almost entirely upon the testimony of Vernell Burris" to calculate its loss amount. Id. Burnell testified that "20 percent [of HOPE's sales employees] were lying" and they generated "80 percent of the production." Docket # 303, at 73:12–14. Fischer disputes Burris's testimony and contends that "5 or 6 fraudulent sales people were not capable of selling $2,800,000 worth of goods and services." Docket # 341, at 3. According to Fischer, "[h]ad counsel reviewed records, interviewed witnesses, or done any investigation he could have rebutted Burris' testimony [regarding the loss amount]," id. at 3, and "would likely have lead to an even shorter sentence." Id. at 2.

As an initial matter, Fischer's petition "amount[s] to mere 'bald' assertions without sufficiently particular and supportive allegations of fact.'" Barrett v. United States, 965 F.2d 1184, 1186 (quoting Moran, 494 F.2d at 1222). He has the burden of presenting specific facts that support his claim of the allegedly deficient performance. He has not

---

[5]     Fischer further alleges that the "next error" committed by counsel was "counsel's failure to put up a defense at trial." Docket # 341, at 3. In support of this argument, however, he re-argues his first claim, namely that counsel failed to present a defense because he failed "to challenge the loss amount." Id. Accordingly, I read this not as a separate claim, but rather additional argument in support of his sole claim of counsel's alleged failure to investigate and challenge the government's proposed loss amount.

8

done so.

His claim that counsel was ineffective for failing "to challenge the loss amount" is also belied by the record. Counsel for both petitioners did cross-examine the government's witnesses, including Burris, regarding loss amount. Further, at the sentencing phase, Godfrey's counsel challenged the loss amount in his objections to the presentence investigation report ("PSR"), which was identical to that in Fischer's PSR, in his sentencing memorandum, and in argument during the sentencing hearing. Specifically, he argued for a lower loss amount calculation of $150,103 based on a spreadsheet produced by the Florida Attorney General's Office that conducted an investigation in connection with a civil lawsuit filed against HOPE. Although the objections were presented by Godfrey's counsel, Fischer's counsel, during trial, represented to the court that it was a "joint defense." See Docket # 306, at 91:20–21 ("Mr. Sheketoff: So, it's pretty clear, it seems to me, that this is a joint defense, so I'm not just going to repeat the exact same things that were said."). Moreover, I considered the lower loss amount argument presented by Godfrey's counsel in determining the sentence for both defendants, and stated during the sentencing hearing that "[the] amounts of money, number of victims . . . is not, especially in this case, a reliable indicator of a proper sentence." Sentencing Hrng. Tr., Docket # 307, at 31:4–6. Thus, the record conclusively demonstrates that Fischer is not entitled to section 2255 relief and no evidentiary hearing is required for claims that are "inadequate on their face." Barrett, 965 F.2d at 1195; see id. at 1186 ("An evidentiary hearing is not required where the section 2255 petition, any accompanying exhibits, and the record evidence 'plainly [reveal] . . . that the movant is not entitled to relief.'") (quoting Rule 4(b) Rules

9

Governing § 2255 Proceedings))[6].

## IV. Conclusion

Godfrey's Motion to Vacate, Set Aside, or Correct A Sentence pursuant to 28 U.S.C. § 2255 (Docket # 336) is DENIED. His Motion for Evidentiary Hearing (Docket # 337) is also DENIED.

Fischer's Motion to Vacate, Set Aside, or Correct Defendant's Sentence pursuant to 28 U.S.C. § 2255 (Docket # 340) is DENIED.

## V. Ruling on Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts, I find that this case is not appropriate for the issuance of a certificate of appealability because both Godfrey and Fischer have failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2).

Petitioners are advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. See Rule 11(a), Rules Governing Section 2255 Proceedings.

|      June 12, 2017      |      /s/Rya W. Zobel      |
|:---:|:---:|
| DATE | RYA W. ZOBEL<br>SENIOR UNITED STATES DISTRICT JUDGE |

---

[6] For the same reasons, I reject Fischer's claim that counsel was ineffective for failing to appeal the loss amount. See Docket # 341, at 3.